The STATE of Ohio, Appellee,

v.

HUDDLESTON, Appellant.

[Cite as State v. Huddleston, 173 Ohio App.3d 17, 2007-Ohio-4455.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 06AP–957.

Decided Aug. 30, 2007.

Ron O'Brien, Prosecuting Attorney, and Seth L. Gilbert, Assistant Prosecuting Attorney, for appellee.

Joseph R. Landusky II, for appellant.

PETREE, Judge.

{¶ 1} Defendant-appellant, Tammy L. Huddleston, appeals from a judgment of the Franklin County Court of Common Pleas convicting her of aggravated possession of drugs. For the reasons that follow, we reverse and remand.

{¶ 2} On November 2, 2006, the Franklin County Grand Jury indicted defendant on one count of aggravated possession of drugs, a violation of R.C. 2925.11 and a felony of the fifth degree. Defendant initially pleaded not guilty. In August 2006, defendant filed a motion to suppress evidence obtained in connection with the inventory search of an impounded vehicle. A hearing was held on the motion.

{¶ 3} The facts, which were set forth at the suppression hearing, are largely undisputed. Gahanna police officers Dan Engram and Tim Hare were dispatched to a supermarket in Gahanna where they arrested defendant for shoplifting. When asked for her identification, defendant responded that it was in her car, which was parked in the parking lot. Defendant wanted to retrieve her identification herself, but the officers asked for the location of the car so that they could retrieve her identification. Defendant looked around the parking lot and stated that the car was no longer there.

{¶ 4} Thereafter, defendant was taken to the police station. During a search incident to defendant's arrest, Officer Hare found a set of car keys. The license plate number of the vehicle was on the keychain. Officer Hare asked Officer Engram to check the supermarket parking lot for the vehicle. Based on the keychain, the vehicle was identified as a rental car, and Officer Engram attempted to contact the rental company. According to Officer Engram, had the rental company answered, responsibility for the vehicle and its contents would have been transferred to the rental company. Failing to get an answer, Officer Engram, using the license plate identification on the keychain, located the vehicle in order to impound it "[t]o make sure that the vehicle and the contents inside are safe." Officer Engram further explained that he impounded the vehicle because he "wasn't willing to incur the liability of her having a vehicle in the lot and not [sic] and leaving it there. It just makes me feel better to be able to impound a person's property and belongings to make sure that—I can make sure that it is safe there."

{¶ 5} According to Officer Engram's testimony, the vehicle was impounded in accordance with standard operating procedure. Officer Engram testified that it is standard operating procedure to impound the vehicle of "any arrested person where a vehicle is being left behind," even when the person is arrested for a misdemeanor. Officer Engram further testified that it is standard operating procedure to impound a vehicle when a person is arrested for a misdemeanor

shoplifting offense, even when the person is arrested in the store and his or her vehicle is legally parked in the store parking lot. Officer Engram testified that the vehicle was impounded because it was unattended as a result of the misdemeanor arrest, not because of the arrest itself.

{¶ 6} Officer Engram took inventory of the vehicle and found defendant's wallet on the front seat. Methamphetamine was found in a plastic baggie inside a side pocket of the wallet.

{¶ 7} The trial court denied defendant's motion to suppress. Defendant then changed her plea to no contest to the charge of aggravated possession of drugs, a violation of R.C. 2925.11 and a felony of the fifth degree. The trial court found defendant guilty of the charge to which the plea was entered. As a result, defendant was placed on community control for a period of three years, and her driver's license was suspended for six months. Defendant appeals to this court from that judgment and sets forth the following assignment of error for our review:

The trial court erred by overruling the defendant's motion to suppress evidence when the testimony revealed that the defendant's vehicle had been unlawfully seized and impounded since the law does not allow for the seizure or impoundment of a motor vehicle when the defendant is arrested for a misdemeanor shoplifting offense inside of a grocery store and away from the vehicle.

{¶ 8} In this appeal, defendant contends that the trial court erred by overruling her motion to suppress the evidence obtained as a result of the inventory search of the impounded vehicle. The defense bases its assignment of error on the assertion that the seizure or impound of the motor vehicle under the circumstances of this case was unlawful.

{¶ 9} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶ 8. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972. Consequently, "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence," and "[a]ccepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, at ¶ 100.

{¶ 10} The central issue in this matter is whether the seizure or impoundment of the vehicle was lawful. The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment,

and Section 14, Article I of the Ohio Constitution, protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The language of Section 14, Article I of the Ohio Constitution and the Fourth Amendment to the United States Constitution are coextensive and provide the same protections. *State v. Robinette* (1997), 80 Ohio St.3d 234, 238–239, 685 N.E.2d 762. " '[T]he underlying command of the Fourth Amendment is always that searches and seizures be reasonable.' " *Wilson v. Arkansas* (1995), 514 U.S. 927, 931, 115 S.Ct. 1914, 131 L.Ed.2d 976, quoting *New Jersey v. T.L.O.* (1985), 469 U.S. 325, 337, 105 S.Ct. 733, 83 L.Ed.2d 720.

█ {¶ 11} "Warrantless searches are generally considered unreasonable. Accordingly, evidence obtained by means of a warrantless search is subject to exclusion, unless the circumstances of the search establish it as constitutionally reasonable." (Citations omitted.) *AL Post 763 v. Ohio Liquor Control Comm.* (1998), 82 Ohio St.3d 108, 111, 694 N.E.2d 905. "Certain warrantless searches have been judicially recognized as reasonable notwithstanding the presumption of unreasonableness dictated by the Fourth Amendment." Id., citing *Stone v. Stow* (1992), 64 Ohio St.3d 156, 164–165, 593 N.E.2d 294, fn. 4. The "inventory search" is one such exception to the warrant requirement of the Fourth Amendment. *Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 524 N.E.2d 889.

█ {¶ 12} Constitutionally permissible inventory searches of lawfully impounded vehicles are done "to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Colorado v. Bertine* (1987), 479 U.S. 367, 372, 107 S.Ct. 738, 93 L.Ed.2d 739; *South Dakota v. Opperman* (1976), 428 U.S. 364, 369, 96 S.Ct. 3092, 49 L.Ed.2d 1000. Thus, for the inventory-search exception to apply, the vehicle must have been lawfully impounded. See *State v. Clancy* (Apr. 19, 2002), Montgomery App. No. 18844, 2002 WL 628124 (noting that a vehicle must be lawfully impounded in order for the police to perform a valid inventory search of the vehicle).

{¶ 13} According to the state, an "impoundment of a vehicle is lawful if authorized by standard police procedures," citing *State v. Gordon* (1994), 95 Ohio App.3d 334, 338, 642 N.E.2d 440. Indeed, it has been stated that "[a]n impoundment is lawful if it is conducted pursuant to standardized police procedures." See *Clancy,* supra, citing *Bertine,* supra, 479 U.S. at 375–376, 107 S.Ct. 738, 93 L.Ed.2d 739. However, the Supreme Court of Ohio, in *Blue Ash v. Kavanagh,* 113 Ohio St.3d 67, 2007-Ohio-1103, 862 N.E.2d 810, at ¶ 18, recently stated that "*Bertine* requires standardized procedures with regard to inventory searches, not impoundment." See, also, *United States v. Coccia* (C.A.1, 2006), 446 F.3d 233, 238 (interpreting *Bertine* "to indicate that an impoundment decision made

pursuant to standardized procedures will most likely, although not necessarily always, satisfy the Fourth Amendment").

{¶ 14} " 'In determining the lawfulness of the impoundment, authority to impound should never be assumed.' " *State v. Taylor* (1996), 114 Ohio App.3d 416, 422, 683 N.E.2d 367, quoting Katz, Ohio Arrest, Search and Seizure (1996) 224–225. A vehicle may be impounded when " 'it is evidence in a criminal case, used to commit a crime, obtained with funds derived from criminal activities, or unlawfully parked or obstructing traffic; or if the occupant of the vehicle is arrested; or when impoundment is otherwise authorized by statute or municipal ordinance.' " Id. at 422, 683 N.E.2d 367, quoting Katz, supra, at 224–225. See, also, *Opperman*, 428 U.S. at 369, 96 S.Ct. 3092, 49 L.Ed.2d 1000 ("The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge"). Moreover, the United States Supreme Court has stated that police may exercise discretion to impound a vehicle "so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Bertine*, 479 U.S. at 375, 107 S.Ct. 738, 93 L.Ed.2d 739. This discretion is necessarily limited to circumstances in which the officer is authorized to impound the vehicle. See *Blue Ash* and *Taylor*.

{¶ 15} The state argues that the impoundment of the vehicle in this case was consistent with the Gahanna City Code and the written, and/or unwritten, policies of the Gahanna Police Department. Gahanna City Code 303.08 sets forth circumstances in which impoundment of vehicles are authorized. See Gahanna City Code 303.08(a)(1) through (10). The only arguably applicable subsection in that ordinance is (a)(7), which provides that police officers are authorized to provide for the removal of a vehicle "[w]hen any vehicle is left unattended either on public or private property due to the removal of an ill, injured or arrested operator, or due to the abandonment thereof by the operator during or immediately after pursuit by a law enforcement officer." Similarly, Gahanna Police Department Directive 3.33 authorizes the impoundment of a vehicle when the vehicle is left unattended due to the removal of an arrested operator. Additionally, as outlined above, at the suppression hearing, Officer Engram testified that it is standard operating procedure to impound the vehicle of any person who is arrested for a misdemeanor shoplifting offense, even when the person is arrested in the store and his or her vehicle is legally parked in the store parking lot.

{¶ 16} In this case, the trial court determined that Gahanna City Code 303.08(a)(7) authorized the impoundment under the circumstances found here. Specifically, the trial court interpreted Gahanna City Code 303.08(a)(7) to authorize impoundment "when an operator is removed, not necessarily from the vehicle, but removed from control of that vehicle by arrest, not necessarily for a felony,

but for any arrest." We disagree with the trial court's application of Gahanna City Code 303.08(a)(7) to the facts of this case.

{¶ 17} Applying the plain language of the above-cited Gahanna ordinance and police directive to the facts of this case, neither the ordinance nor the directive supported or authorized the impoundment of the vehicle. Here, defendant was not removed from the vehicle at the time of the arrest, nor was she operating the vehicle at the time of the arrest. Defendant was detained in the store by store personnel until the police arrived and arrested her. Thus, although defendant's arrest and transport to the police station left the vehicle unattended in the parking lot for an uncertain period of time, defendant was not in or even near the vehicle when she was arrested. Therefore, we find that neither the Gahanna City Code nor the Gahanna Police Department Directive supported or authorized the impoundment of the vehicle under the circumstances found in this case.

{¶ 18} Regarding the unwritten procedure of the Gahanna Police Department as testified to by Officer Engram, we find that simply because the police department may have a procedure that calls for the impoundment of a vehicle under the circumstances found in this case, that does not render the impoundment constitutionally reasonable.

{¶ 19} According to the state, the impoundment was reasonable under the circumstances. In support of this contention, the state points to the fact that the police unsuccessfully attempted to contact the rental company regarding the vehicle, as well as the fact that there was no evidence that any authorized person was with defendant at the time of the arrest who could have driven the vehicle from the parking lot. In addition, the state relies upon *State v. Humphrey* (Sept. 19, 1989), Franklin App. No. 87AP–1137, 1989 WL 107571, for the proposition that a vehicle may be impounded in order to safeguard it from break-in and theft in a parking lot during the night.

{¶ 20} Indeed, *Humphrey* is like the case at bar in that the defendant's vehicle in *Humphrey* was also legally parked and did not pose a threat to public safety when it was seized and impounded. *Humphrey,* however, is distinguishable. The vehicle in that case was stopped in response to a broadcast description pertaining to an attempted break-in. The operator was in the vehicle when stopped. By stopping the vehicle, the officer exerted control as to the movement (or nonmovement) of the vehicle. Additionally, this court implicitly found a Columbus city ordinance regarding reasons for impoundment to authorize the impoundment in that case. See *Humphrey.*

{¶ 21} In the case at bar, the state fails to direct this court to, and our independent research fails to reveal, any statute or ordinance authorizing the impoundment under the facts found in this case. Moreover, while the issue of

whether another person was available and authorized to drive the vehicle off the parking lot is relevant to determining whether the impoundment was reasonable, it does not change the fact that defendant was in the store, and away from the vehicle, when she was arrested for misdemeanor shoplifting. After obtaining the keys to the vehicle as a result of the search incident to defendant's arrest for misdemeanor shoplifting, an officer took the keys from the police station to the store parking lot to locate the vehicle and impound it. Furthermore, there is no indication that the vehicle was potential evidence in a criminal case, that the vehicle was used to commit a crime, that the vehicle was obtained with funds derived from criminal activity, or that the vehicle was unlawfully parked or impeding traffic. In view of these facts, we resolve that the seizure of the vehicle in this case was unreasonable under the Fourth Amendment to the United States Constitution.

{¶ 22} Based on the foregoing, we find that defendant's vehicle was unlawfully seized and impounded, and, therefore, we further find that the subsequent inventory search of the car was unlawful. Thus, we conclude that the trial court erred by overruling the defendant's motion to suppress the evidence.

{¶ 23} For the foregoing reasons, defendant's assignment of error is well taken and is sustained. Accordingly, the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court for further proceedings in accordance with law and consistent with this opinion.

Judgment accordingly.

KLATT and WHITESIDE, JJ., concur.

WHITESIDE, J., retired, of the Tenth Appellate District, sitting by assignment.