[Cite as *State v. Grigsby*, 2011-Ohio-2062.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 24081 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 09-CR-3740 |
| v. | : | |
| | : | |
| PAUL GRIGSBY | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

## O P I N I O N

Rendered on the 29th day of April, 2011.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by JOHNNA M. SHIA, Atty. Reg. #0067685, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

ADELINA E. HAMILTON, Atty. Reg. #0078595, Law Office of the Public Defender, 117 South Main Street, Suite 400, Dayton, Ohio 45422
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1} Defendant, Paul Grigsby, appeals from his conviction for having a concealed weapon in his car. He argues that the trial court should have sustained his motion to suppress the weapon because the inventory search that uncovered it was conducted after police

unlawfully impounded his car. We conclude that the impoundment and search were lawful, so we will affirm the trial court's decision to overrule the motion to suppress.

**I**

{¶ 2}    On November 6, 2009, around 8pm, in Union, Ohio, Union police officer Michael Fleck, who was in front of a home helping to investigate a domestic violence call, saw a black Monte Carlo drive past. Thinking the driver might be related to the investigation, Officer Fleck ran the car's license plate number through his cruiser's computer. The car was registered to Paul Grigsby II. Grigsby was not related to the domestic violence call, but the computer showed that the car's license plates and registration were subject to confiscation by the registrar of motor vehicles because Grigsby had failed to satisfy certain financial responsibilities imposed by law,[1] in other words, he failed to satisfy Ohio's automobile insurance requirements. Officer Fleck radioed fellow Union police officer Matthew Nave, who was on routine patrol in the area, and gave him a description of the car, along with its license plate number. When Officer Nave found the car, he too ran the number and verified that the plates were subject to confiscation. Officer Nave turned on his overhead lights, and Grigsby pulled into the parking lot of a State Farm Insurance agency just off Main Street in Union.

{¶ 3}    After obtaining from Grigsby his driver's license and running it through the computer, Officer Nave discovered that Grigsby's driver's license was currently suspended. Rather than arrest him, Nave decided only to cite Grigsby for driving under suspension. Officer Nave asked Grigsby to step into the backseat of his cruiser while he wrote up a

---

[1] The record does not reveal the precise nature of Grigsby's failure.

citation, and Grigsby agreed.

{¶ 4}   Officer Fleck soon arrived, and he and Officer Nave called their supervising officer, Lieutenant Darren Goudy, and asked him what they should do with the car. When Lieutenant Goudy arrived at the scene, the officers told him about the registrar's confiscation order. Goudy told them that under the City of Union Police Department Vehicle Inventory and Towing Policy a vehicle that is "inoperable" must be towed. Goudy believed that Grigsby's car was inoperable because, without license plates, it could not be lawfully operated on any public roadway. Goudy also considered the fact that the vehicle was in the parking lot of a closed business, so the owner's permission could not be obtained to keep the car there. Goudy did not, however, consider allowing Grigsby to himself arrange for the car to be towed.

{¶ 5}   While Officer Nave wrote up the citation, Officer Fleck, pursuant to the Department's inventory and towing policy, began to inventory the items in Grigsby's car. When Officer Fleck open the center console, he saw a loaded ammunition magazine. Fleck walked back to Officer Nave's cruiser and told Nave of his find. Officer Nave asked Grigsby if he had a weapon in the car. Grigsby said yes. The officers found a handgun under the driver's seat and more ammunition in the trunk.

{¶ 6}   The officers then formally arrested Grigsby on gun charges, though they later released him with just the citation.

{¶ 7}   On January 11, 2010, Grigsby was indicted on one count of carrying a concealed weapon in violation of R.C. 2923.12(A)(2) and on one count of improper handling of a firearm in a motor vehicle in violation of R.C. 2923.16(B). Grigsby filed a motion to suppress the gun and ammunition found in his car. After a hearing, the trial court overruled the

motion. On April 12, 2010, Grigsby pleaded no contest to the carrying charge, and, in exchange, the state dismissed the improper handling charge. The trial court sentenced Grigsby to community control for up to 5 years.

{¶ 8}   Grigsby appealed.

## II

{¶ 9}   In a single assignment of error, Grigsby alleges:

{¶ 10} "THE TRIAL COURT ERRED TO THE DEFENDANT-APPELLANT'S PREJUDICE WHEN IT OVERRULED DEFENDANT-APPELLANT'S MOTION TO SUPPRESS BECAUSE THE STATE FAILED TO MEET THIER [sic] BURDEN AT THE SUPPRESSION HEARING THAT THE DECISION TO IMPOUND AND TOW THE DEFENDANT-APPELLANT'S VEHICLE WAS CONDUCTED PURSUANT TO REASONABLE STANDARDIZED PROCEEDURES [sic] AND THE DECISION TO IMPOUND AND TOW THE DEFENDANT-APPELLANT'S VEHICLE CONSTITUTED AN UNREASONABLE SEARCH AND SEIZURE AND VIOLATED THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION."

{¶ 11} Grigsby contends that the impoundment of his car violated the Fourth Amendment's prohibition on unreasonable seizures, rendering the inventory search unlawful and the items found inadmissible under the exclusionary rule.

{¶ 12} "The ultimate standard set forth in the Fourth Amendment is reasonableness." *Cady v. Dombrowski* (1973), 413 U.S. 433, 439, 93 S.Ct. 2523, 37 L.Ed.2d 706. It is

reasonable of police to exercise their discretion and impound a vehicle, rather than leave it, "so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Colorado v. Bertine* (1987), 479 U.S. 367, 375, 107 S.Ct. 738, 93 L.Ed.2d 739. "This discretion is necessarily limited to circumstances in which the officer is authorized to impound the vehicle." *State v. Huddleston*, 173 Ohio App.3d 17, 2007-Ohio-4455, at ¶14, citing *Blue Ash v. Kavanagh*, 113 Ohio St.3d 67, 2007-Ohio-1103, and *State v. Taylor* (1996), 114 Ohio App.3d 415. "[A]uthority to impound should never be assumed," however. *Taylor*, at 422. We have identified several situations in which police have authority to impound a vehicle, among them, "when impoundment is [] authorized by statute or municipal ordinance." Id.

{¶ 13} Here, the state argues that an unwritten established practice of the Union Police Department authorized the impoundment of Grigsby's car. Grigsby argues that to provide authority that is constitutionally permissible the authorizing policy must be in writing. Neither party, however, cites the Union ordinance, which our research uncovered, that authorizes police to impound a vehicle in two pertinent circumstances.[2]

{¶ 14} Section 303.08 of the Union Traffic Code provides:

{¶ 15} "(a) Police officers are authorized to provide for the removal of a vehicle under the following circumstances:

{¶ 16} "* * *

{¶ 17} "(4) When any vehicle displays illegal license plates or fails to display the

---

[2] Although the ordinance was never cited in this case, this court provided counsel for both parties with a copy of the ordinance prior to oral argument so they would have an opportunity to address it.

current lawfully required plates and is located upon any public street or other property open to the public for purposes of vehicular travel or parking.

**{¶ 18}** "* * *

**{¶ 19}** "(9) When any vehicle has been operated by any person who is driving without a lawful license or while his license has been suspended or revoked and is located upon a public street or other property open to the public for purposes of vehicular travel or parking.

**{¶ 20}** "* * *"

**{¶ 21}** We think that the two subsections quoted above authorized the officers to impound Grigsby's car.[3] Once the officers confiscated the car's license plates it no longer displayed any license plates, let alone "the current lawfully required plates" to which subsection (a)(4) of the ordinance refers. Further, it is undisputed that, at the time he was stopped, Grigsby's driver's license was under suspension. Finally, the insurance agency's parking lot qualifies as "property open to the public for purposes of * * * parking," as other Ohio courts have found. At least two courts have determined that city ordinances identical to Union's Section 303.08(a) authorize police to impound a vehicle located in a private business's parking lot. See *State v. Colopy*, Licking App. No. 09 CA 105, 2010-Ohio-2804, at ¶13-15 (parking lot of a grocery store) and *State v. Mercer* (March 27, 1995), Butler App. No. CA94-06-133 (parking lot of a restaurant). A third Ohio court has determined that a city ordinance authorizing impoundment from "public grounds" authorized police to impound a vehicle located in the parking lot of a shopping center. See *State v. Humphrey* (Sept. 19,

---

[3]Although the issue was not raised below, we may rely on it to reach our decision. See *Iams v. DaimlerChrysler Corp.*, 174 Ohio App.3d 537, 2007-Ohio-6709, at ¶60 ("'A judgment by the trial court which is correct, but for a different reason, will be affirmed on appeal as there is no prejudice to the appellant.'"), quoting *Bonner v. Bonner*, Union App. No. 14-05-26, 2005-Ohio-6173, at ¶18.

1989), Franklin App. No. 87AP-1137.

**{¶ 22}** Since we conclude that a municipal ordinance authorized the Union police officers to tow and impound Grigsby's car, we need not address any other basis of authority raised by the parties.[4] Still, we will briefly address Grigsby's collateral attack on R.C. 4509.101, the statute that authorized the Union police officers to confiscate his license plates on behalf of the registrar of motor vehicles.

**{¶ 23}** Grigsby contends that the statute grants individual police officers too much discretion and contends that it violates the Equal Protection Clause of the United States and Ohio constitutions. But the Union officers did not need the authority in this statute. (And Grigsby admits that the state never cited it as having provided authority.) It is against the law to drive on public roads with a suspended driver's license, see R.C. 4510.11(A), which Grigsby was doing. On this basis alone, the police were permitted to conduct the initial stop. The Union ordinance then authorized the police to remove Grigsby's car because it was being operated by a person (Grigsby) driving with a suspended license. See Traffic Code Section 303.08(a)(9). Whether or not the police could also confiscate the car's license plates under R.C. 4509.101 is immaterial.

**{¶ 24}** The sole assignment of error is overruled.

---

[4] The state argues that an established practice provided the authority; Grigsby argues that it did not. Grigsby also argues that neither R.C. 4513.60 (authorizing the removal of a vehicle left on private residential or private agricultural property) nor R.C. 4513.63 (authorizing the removal of "abandoned junk motor vehicles") authorized impoundment in the circumstances of this case. Finally, Grigsby argues that the Union police's "community caretaking function" to protect his car from theft or vandalism could not have authorized impoundment here. See *South Dakota v. Opperman* (1976), 428 U.S. 364, 368, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (saying that, "[i]n the interests of public safety and as part of * * * [the] 'community caretaking functions,' automobiles are frequently taken into police custody"), quoting *Cady*, at 441.

**{¶ 25}** The judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

GRADY, P.J., and FAIN, J., concur.

Copies mailed to:

Mathias H. Heck, Jr.
Johnna M. Shia
Adelina E. Hamilton
Hon. Timothy N. O'Connell