[Cite as *State v. Hall-Johnson*, 2022-Ohio-3512.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 21AP-565 |
| v. | : | (C.P.C. No. 19CR-2614) |
| Darayl T. Hall-Johnson | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on September 30, 2022

**On brief:** *G. Gary Tyack,* Prosecuting Attorney, and *Mark R. Wilson,* for appellee.

**On brief**: *Kimberlyn Seccuro*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Defendant-appellant, Darayl T. Hall-Johnson, appeals the decision of the Franklin County Court of Common Pleas denying his motion to suppress evidence, following his plea of no contest to a fourth-degree felony charge of Improper Handling of a Firearm in a Motor Vehicle. He asserts one assignment of error with the trial court's judgment, arguing that the trial court erred "because the impounding and subsequent inventory search violated the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution."

{¶ 2} Columbus Police Officers Dover and Davis were working community response duty in Columbus on March 9, 2019 around 6 p.m., and received a call to

investigate a complaint regarding a parked car blaring music. As they approached South Ohio Avenue driving west on Sycamore Street, they saw a legally parked white car and could hear music emanating from it. Officer Dover later testified that "[w]hen we looked for where the loud music was, we saw the car had dark window tint and we couldn't see really what was going on inside the car, basically shadows moving around." (Tr. at 10-11.) As the police cruiser pulled up behind the parked white car, Hall-Johnson exited the car's driver side. *Id.* at 11. Officer Dover parked the cruiser, and Officer Davis exited the passenger side of the cruiser and approached Hall-Johnson.

{¶ 3} Officer Davis' body camera footage reveals that Hall-Johnson was already standing outside the car with the door open at the time of Officer Davis' approach, and the vehicle appeared to be running. (*See, e.g.,* Davis Body Camera Footage, Def. Ex. 1.) Officer Davis approached Hall-Johnson, exchanged words with him, and beckoned him to come back to the cruiser. After attempting to get back into his car and being directed not to do so by Officer Davis, Hall-Johnson complied and accompanied Officer Davis to the cruiser. Hall-Johnson sat in the back of the cruiser and answered a few introductory questions, at which point Officer Davis stated that he was concerned with the window tint level on Hall-Johnson's vehicle. Hall-Johnson replied that he had purchased the vehicle with the tint and had been driving it that way for a year, and also that he was from Lorain, Ohio. Hall-Johnson also indicated that he wanted to return to his car to get his driver's license, but Officer Davis refused that request and instead asked Hall-Johnson if he would allow Officer Davis to retrieve it. Hall-Johnson rejected his offer. (Tr. at 12.) Hall-Johnson remained in the back of the cruiser as Officer Davis approached the front passenger side of the cruiser, leaned in the open passenger door and informed Officer Dover that he believed Hall-Johnson's car should be towed because of the tint level. Hall-Johnson became upset when

he heard that his car would be impounded and requested to get out of the cruiser. Officer Davis allowed him to exit and stand next to the cruiser.

{¶ 4} Officer Dover radioed a request to another officer to bring a tint meter to the scene, but that officer did not arrive for approximately 11 minutes. Hall-Johnson is directed to stand near the cruiser under the watch of Officer Davis during this delay.[1] Ultimately, the second cruiser arrived with the tint meter and gave it to Officer Dover, who approached Hall-Johnson's car, opened the driver side door, measured the tint level of the door in front of Hall-Johnson, and reported that it is a prohibited level of tint. (*See*, *e.g.,* Dover Body Camera Footage, State's Ex. A and Tr. at 13-16.)

{¶ 5} Officer Dover then took over supervising Hall-Johnson while Officer Davis approached the vehicle, shut off the power and turned off the music. Officer Davis retrieved three cellular telephones from the vehicle and returned them to Hall-Johnson, returned to the vehicle and examined a number of open compartments, including the space between the center console and the passenger seat. He then abruptly left the vehicle and returned to Hall-Johnson, whom he placed in handcuffs. Officer Davis then put on new nitrile gloves and reached into the open space between the center console and the passenger seat, from which he removed a pistol.

{¶ 6} Hall-Johnson was subsequently charged with improper handling of a firearm and thereafter filed a motion to suppress the fruits of the search, arguing that the officers conducted an illegal stop and search of his vehicle. Officer Dover testified and the officers'

---

[1] Our review of the footage of the incident reveals an unusual level of antagonism by Officer Davis towards Hall-Johnson while they were waiting for the tint meter to arrive. While his behavior does not suggest reversible error, we are concerned with his choice to repeatedly prompt a detained individual to respond to irrelevant topics of conversation that seem likely to spur a negative reaction. *See generally* Davis Body Camera Footage.

body camera videos were played at an evidentiary hearing on Hall-Johnson's suppression motion. On cross-examination by Hall-Johnson's attorney, Officer Dover stated as follows:

> Q: In the meantime, I just want to make sure I understand. To your knowledge, if there's an equipment violation, towing the car is always what CPD would advise that you do?
>
> A: I mean, it depends on the totality of the circumstances, like always; but there's no we're always going to tow the car, unless there's no ops and there's no legal driver.
>
> * * *
>
> Q: What makes this one, in the totality of the circumstances, more than a window tint ticket?
>
> A: Well, the window tint is at 50 percent. It's hard to see out, especially this day when it was raining and cloudy, and he said he was going to drive back two and a half hours to wherever Ohio. I think it was north Ohio.
>
> * * *
>
> Q: Uh-huh. When you talk about equipment violations and the totality of the circumstances, the prosecuting attorney asked you about it and you said it's an officer safety issue, correct?
>
> A: Window tint is an officer safety issue, as well as a person safety issue, driving a car that you can't see out.
>
> * * *
>
> Q: Just for the record, there's nothing illegal except for the window tint violation, right up until an administrative search is done pursuant to towing, correct?
>
> A: Like illegal in the vehicle, other than loud noise?
>
> Q: Yes.
>
> A: Correct.
>
> Q: Okay. And your belief with regard to the towing policy is that any equipment violation, except for the license violation, is sufficient to tow and do an inventory search of a vehicle, correct?
>
> A: Correct.

&ast; &ast; &ast;

Q: Sure. When you see somebody shuffling around inside a car with illegal window tint, you said based on your training and experience, that might be something illegal.

A: I don't believe so. I think I said I believed the window tint to be illegal because I couldn't see him moving around in the car.

Q: Tell me what about the illegal window tint, in your assignment that day, made him somebody that you wanted to interact with, where you might not react to a minor misdemeanor.

A: Well, we -- again, we heard the loud noise, the loud music. We stopped to see who it was. We saw the window tint, and before we could finish running the license plate, the defendant jumped out of the car.

&ast; &ast; &ast;

Q: All right. And you heard your partner say at 18:05:14, before the window tintometer got there, "We should impound his vehicle," correct?

A: Yes, but I did not hear that the defendant admitted to illegal window tint.

Q: Okay. In your mind, this wasn't worthy of towing because you hadn't heard the admission. You needed to see the meter give a read-out, right?

A: I needed to see the probable cause; and that would be the probable cause to tow the vehicle, would be the tint meter.

Q: Okay. When you looked at the car, you didn't see reasonable suspicion, probable cause, whatever word we're using. You didn't see enough to tow the car at this point?

A: No. I had reasonable suspicion that the tint was illegal, but I didn't have probable cause.

(Tr. at 30-45.) Following the hearing, the trial court took the motion under advisement, and ultimately issued a written decision denying the motion:

Regarding the search of the Defendant's vehicle, this Court finds the inventory search to also have been a proper exercise

of the officers' lawful impoundment of an unsafe vehicle. An inventory search is "a well-defined exception to the warrant requirement." An inventory search of a vehicle and its contents does not violate the Fourth Amendment when the vehicle is lawfully impounded by police and the search is conducted according to standard procedure.

The officers in this case possessed the lawful authority to impound the Defendant's vehicle due to its unsafe, illegal window tint. Columbus City Code authorizes a law enforcement officer to impound "[a]ny vehicle that fails to comply with the provisions of this Traffic Code relative to equipment." C.C.C. Section 2107.01(i). The tint on the windows of the Defendant's vehicle were in fact an illegal equipment violation under C.C.C. 2137.221, giving the officers the discretion to impound it.

Officer Dover conceded that not every vehicle guilty of an equipment violation is impounded. The nature and circumstances surrounding the Defendant's vehicle, however, led the officers to exercise their discretion to impound in this case. Officer Dover testified that a vehicle with windows as darkly-tinted as the Defendant's poses a legitimate safety concern both for the driver of the vehicle and for law enforcement officers effectuating a traffic stop. A tint of 35% on a vehicle's windows means that 65% of light is blocked from going into the vehicle. Such darkness, according to Officer Dover's training and experience, makes it difficult for the operator of a motor vehicle to effectively see through the windows, especially at night. Officer Dover testified that the encounter with the Defendant took place at around 6:00 in the evening and the weather was rainy and cloudy, making driving with the tinted windows even more unsafe than usual. Additionally, illegally tinted windows present a hazard to law enforcement officers, as they are unable to see the activities of a driver and occupants while approaching a vehicle during a traffic stop. Finally, the officers were concerned that the Defendant was not from the area and that he did not display a willingness to correct the violation in the near future, as he informed the officers that his vehicle had possessed the illegal windows for at least a year.

Given the equipment violation on the defendant's vehicle and the determination that it was unsafe to operate, the officers were legally authorized to impound the vehicle pursuant to C.C.C. 2107.01 and the subsequent inventory search was conducted according to standard procedure. As such, the

> inventory search of the defendant's vehicle was proper and not in violation of the Fourth Amendment.

(Internal citations omitted.) (Sept. 30, 2021 Decision & Entry Denying Def's Mot. to Suppress at 3-4.) Hall-Johnson subsequently entered a no contest plea, was found guilty, and was sentenced to a two-year community control sanction according to law. This timely appeal followed.

{¶ 7} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. The trial court is in the "best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Therefore, appellate courts afford deference to the trial court's factual determinations and accept such determinations if they are supported by "competent, credible evidence." *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). We "must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

{¶ 8} The question in this case is whether the detention of Hall-Johnson and the subsequent impoundment and inventory search of his vehicle was warranted under *Terry v. Ohio*, 392 U.S. 1 (1968). Under *Terry*, a search warrant is not required for an officer to conduct an investigatory stop and pat down, so long as the stop is based on "reasonable suspicion":

> [A]n investigatory stop * * * is permitted to "stop or detain an individual without probable cause when the officer has a reasonable suspicion, based on specific, articulable facts, that criminal activity is afoot." *State v. Jones*, 188 Ohio App.3d 628, 2010-Ohio-2854, ¶ 16, 936 N.E.2d 529 (10th Dist.). *Terry* permits a police officer to "conduct a brief warrantless search

> of an individual's person for weapons if the officer has a reasonable and articulable suspicion that the 'individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or others.' " *State v. Cordell*, 10th Dist. No. 12AP-42, 2013-Ohio-3009, ¶ 13, quoting *Terry* at 24. The purpose of such a limited search "is not intended to discover evidence of a crime, but to allow the officer to pursue his duties 'without fear of violence.' " *Id.*, quoting *Adams v. Williams*, 407 U.S. 143, 146, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972).

*State v. Thip*, 10th Dist. No. 15AP-403, 2016-Ohio-4970, ¶ 13. By contrast, a "consensual encounter" does not require such reasonable suspicion:

> [A] police officer, like any other citizen, may approach an individual in a public place, engage that individual in conversation, and request information or assistance. So long as the person is free not to respond and to walk away, no Fourth Amendment interest in engaged * * *. [As *Terry* recognized:] Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a "seizure" has occurred.

Gianelli and Katz, *Ohio Practice Criminal Law* 3d. Ed., Vol. I, Sec. 18:3, quoting *Terry*, 392 U.S. at 20.

{¶ 9} Here, Hall-Johnson first argues that the police did not have a reasonable suspicion to investigate and detain Hall-Johnson because "being in a high crime neighborhood, playing 'loud music,' and having dark window tint does not rise to the level required to meet the standard of reasonable suspicion." (Brief of Appellant at 6-10.) But the initial approach of Hall-Johnson was not a *Terry* stop; Hall-Johnson was already parked and had already left his vehicle when the police approached. Officers generally do not need reasonable suspicion to approach members of the public, since police encounters with the public virtually always begin as "consensual," *Terry*, 392 U.S. at 20, and there are no other facts in the record which suggest that this case should be treated as a detention from the outset. The initial approach, in turn, permitted Officer Davis to see that Hall-

Johnson's tint was dark enough for them to develop a reasonable suspicion that it was illegal, giving the officers cause to investigate further and call for a tint meter. As Officer Dover correctly testified at the suppression hearing, at that point "I had reasonable suspicion that the tint was illegal, but I didn't have probable cause." (Tr. at 45.)

{¶ 10} Hall-Johnson next contends that "[e]ven if the officers had reasonable suspicion to stop [him], they unlawfully impounded and inventoried his vehicle." (Brief of Appellant at 10-11.) He cites this court's decision in *State v. Huddleston*, 173 Ohio App.3d 17, 2007-Ohio-4455, which held that the Gahanna City Code did not authorize the impoundment and inventory search of an "unattended" vehicle where the driver was not removed from the vehicle and was not operating the vehicle at the time of the arrest. But in that case, the vehicle was not even located and identified until after the defendant was arrested, and when it was located it was legally parked in a parking lot. In *Huddleston*, we held that the plain language of the Gahanna ordinance upon which the police had relied to impound the vehicle did not in fact authorize or even support the impoundment, and for that reason the inventory search of the vehicle was invalid. *Id.* at ¶ 17-22.

{¶ 11} By contrast, here the trial court correctly observed that the Columbus City Code Section 2107.01(i) provides that "[a]ny law enforcement officer * * * is authorized to remove or cause removal from the streets, easements, public right-of-ways, highways, sidewalks, or other property open to the public for the purpose of vehicular traffic or parking * * * [a]ny vehicle that fails to comply with the provisions of this Traffic Code relative to equipment," and that excessive window tinting under both Columbus City Code Section 2137.221 and R.C. 4513.241 are violations "relative to equipment," as both fall within the "equipment" sections of their respective codes. Therefore, once the officers confirmed that the window tint level of Hall-Johnson's vehicle was illegal, they were

authorized to tow Hall-Johnson's vehicle. Officer Dover's testimony established that even though patrol officers have some discretion whether or not to tow a vehicle, that the officers properly considered the weather and the length of the drive ahead of Hall-Johnson in concluding that it would be unsafe for him to drive the vehicle with that tint level. (Tr. at 30-45.)

{¶ 12} Once the officers determined that it would be necessary to impound the vehicle, they were authorized to inventory the contents of the vehicle prior to towing it. And Officer Davis' bodycam footage of the inventory search establishes that the inventory was being properly conducted when he discovered the pistol that was loose in the front compartment. We therefore conclude that the trial court's analysis of the approach, stop, and seizure of Hall-Johnson's vehicle was correct, and that the subsequent inventory search of the vehicle was lawful. Hall-Johnson has not shown that the officers in this case acted in violation of the Fourth Amendment, and we accordingly overrule his single assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

MENTEL and JAMISON, JJ., concur.

————————————