[Cite as *State v. Johnson*, 2014-Ohio-2856.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 26914 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| JALONTE JOHNSON | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 2012-12-3442 |

DECISION AND JOURNAL ENTRY

Dated: June 30, 2014

MOORE, Presiding Judge.

{¶1} Defendant-Appellant, Jalonte Johnson, appeals from the April 12, 2013 judgment entry of the Summit County Court of Common Pleas. We affirm, in part, and reverse, in part.

{¶2} In December of 2012, Aaron Burnette, a University of Akron Police Officer, recognized Mr. Johnson's white Lexus while on routine patrol at the intersection of Grant and Thornton Streets. Based upon the position of their vehicles, Officer Burnette was able to identify Mr. Johnson as the driver of the Lexus. Because he knew that Mr. Johnson had a suspended driver's license from previous encounters, Officer Burnette initiated a traffic stop in order to "find out why [Mr. Johnson] was driving under suspension again."

{¶3} After issuing a traffic citation for driving under suspension, driving without insurance, and failing to dim headlights, a series of events occurred leading to Mr. Johnson's arrest.

{¶4} Mr. Johnson was indicted on one count of assault, in violation of R.C. 2903.13(A), a felony of the fourth degree, one count of resisting arrest, in violation of R.C. 2921.33(B), a misdemeanor of the first degree, one count of obstructing official business, in violation of R.C. 2921.31(B), a felony of the fifth degree, and one count of driving under financial responsibility law suspension or cancellation, in violation R.C. 4510.16, a misdemeanor of the fourth degree. He pleaded not guilty and the matter proceeded to a bench trial. The trial court found him guilty on all counts and sentenced him to eighteen months of community control.

{¶5} Mr. Johnson timely appealed, and now raises three assignments of error for our consideration.

## II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT OVERRULED [MR.] JOHNSON'S CRIM.R. 29(A) MOTION FOR ACQUITTAL BECAUSE THE EVIDENCE WAS INSUFFICIENT TO SUPPORT A CONVICTION FOR OBSTRUCTION OF OFFICIAL BUSINESS, ASSAULT OF A PEACE OFFICER, AND RESISTING ARREST.

{¶6} In his first assignment of error, Mr. Johnson argues that his convictions for obstructing official business, assault, and resisting arrest are not supported by sufficient evidence.

{¶7} The issue of whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). When considering a challenge to the sufficiency of the evidence, the court must determine whether the prosecution has met its burden of production. *Id.* at 390 (Cook, J. concurring). The relevant question is whether, after viewing the evidence in a light most favorable to the prosecution, any

rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

Obstructing Official Business

{¶8} Mr. Johnson was convicted of obstructing official business, in violation of R.C. 2921.31, which provides that:

> (A) No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.

{¶9} In his brief, Mr. Johnson asserts that the State failed to meet its burden of production because there was no evidence showing that: (1) Mr. Johnson committed any act for which he did not have privilege in attempting to leave the premises, (2) Officer Burnette was performing an authorized act in performance of his lawful duties at the time Mr. Johnson attempted to leave the premises, and (3) any act committed by Mr. Johnson hampered, impeded or delayed Officer Burnette in performing an authorized act in furtherance of his lawful duties. Specifically, Mr. Johnson alleges that Officer Burnette's act of impounding the vehicle was not authorized by law, and, as such, his actions did not violate R.C. 2921.31.

{¶10} In its case-in-chief, the State called Officer Burnette to testify regarding this incident. Officer Burnette testified that he has been employed with the University of Akron Police Department for seventeen years; fourteen years as a police officer. On December 10, 2012, at approximately 1 a.m., he was patrolling the University Park District when he recognized Mr. Johnson's vehicle at the intersection of Grant and Thornton Streets. He stated that he observed "a white Lexus sitting at the red light facing westbound, and it appeared to be a vehicle that [he] had previous contact with." When asked about the nature of his prior contact with this vehicle, Officer Burnette testified that he "had several contacts with the driver driving under

suspension." Based upon the position of their vehicles, he was able to identify Mr. Johnson as the driver.

{¶11} Officer Burnette further testified that he followed Mr. Johnson and turned on his overhead lights just as Mr. Johnson was pulling into the driveway at 681 Grant Street. He parked his police cruiser behind Mr. Johnson in the driveway. Officer Burnette then asked Mr. Johnson why he was driving, to which Mr. Johnson replied "he was not driving and that he was at his destination and there was no reason to tow his vehicle." At that time, Officer Burnette confirmed that Mr. Johnson's license was still suspended, handcuffed and placed him in the back of the police cruiser, and issued him a traffic citation.

{¶12} Additionally, Officer Burnette explained his procedure after stopping someone for driving under suspension:

> What I do is I –as on any arrest for driving under suspension, I complete a driving inventory, separate the ignition key from the rest of the keys, because the ignition key has to go to the tow yard, and I give the remainder of the keys to the driver. What I did; I put the ignition key in the ignition for the tow company and laid the rest of the keys on the driver's seat for the driver to obtain when we were finished.

The record indicates that, after Officer Burnette completed the inventory, Mr. Johnson requested to make a phone call and to retrieve some valuables from the car. Officer Burnette allowed this, and observed Mr. Johnson making a phone call from the driver's seat. Because of the rain, Officer Burnette was waiting inside his police cruiser for the tow truck to arrive when he saw Mr. Johnson's reverse lights go on. Officer Burnette testified:

> * * *
>
> I kind of assumed at that point there was going to be a problem, so I got out of my car and started to approach his driver's door, and I got up almost next to the tree when he [peeled] his tires in reverse.
>
> * * *

*He struck me with the vehicle, and then he hit the tree.*

* * *

I was able to get the passenger door open because once he hit the tree, it was the part of the car that was directly in front of me[.] *I opened the passenger door and screamed, "shut the car off, shut the car off," and then he reached down because the shift was in the center console, pulled it down into drive and began to pull forward.*

* * *

[Mr. Johnson] put the car into drive and then took me and the vehicle back [up] the driveway.

* * *

He was peeling tires, throwing mud on me and my cruiser, and I was able to reach for my gun, got my gun out and then he bailed out the driver door.

* * *

I had him in sight, so I fired my Taser to stop him from running.

* * *

There was a bit of a struggle. He was on his back yelling and flailing his arms, and he knocked my Taser out of my arm, because I could still use it as a dry stun device, and I didn't do that at that point. My Taser went into a puddle of water and was damaged. I was able to physically roll him over on his stomach, and I got him handcuffed at that point.

(Emphasis added.)

{¶13} As stated above, Mr. Johnson's argument on appeal focuses on whether Officer Burnette had the authority to tow/impound his car under Ohio law. *See* R.C. 2921.31. In *State v. Huddleston*, 173 Ohio App.3d 17, 2007-Ohio-4455, ¶ 14 (10th Dist.), the Tenth District Court of Appeals directs us to the following considerations with regard to the authority to impound a vehicle, stating:

In determining the lawfulness of the impoundment, authority to impound should never be assumed. A vehicle may be impounded when it is evidence in a criminal case, used to commit a crime, obtained with funds derived from criminal activities, or unlawfully parked or obstructing traffic; or if the occupant of the

vehicle is arrested; or when impoundment is otherwise authorized by statute or municipal ordinance.

(Internal quotations and citations omitted.)

**{¶14}** Here, it is evident that the record before us lacks several facts that would have assisted this Court in analyzing whether Officer Burnette had the legal authority to impound Mr. Johnson's car after issuing him a traffic citation for driving under suspension. Officer Burnette's testimony does not indicate whether the driveway at 681 Grant Street[1] is on private or public property. We acknowledge that the State presented a photograph of the property it claimed to be 681 Grant Street as an exhibit, and although this section of Grant appears to be residential, Officer Burnette does not inform us whether Mr. Johnson parked his vehicle on private, residential property or public property. This information could be essential to an analysis because if the vehicle is parked on private, residential property, the officer's authority to impound it may be restricted by R.C. 4513.60. Further, Officer Burnette does not testify regarding his rationale for impounding the vehicle at that particular point in time (i.e., a public safety concern in leaving a vehicle in someone's driveway, the vehicle is abandoned, the vehicle is blocking a garage or access to the driveway.). Finally, Officer Burnette's testimony does not reveal, and the State does not reference, any statute or ordinance authorizing the impoundment of the vehicle under the particular facts of this case.

**{¶15}** Based upon the foregoing, it is unclear from the record whether Officer Burnette had the authority to impound Mr. Johnson's car *at the point in time that he had completed the traffic citation and allowed Mr. Johnson to return to his vehicle*. However, because of the course of events that occur *after* Mr. Johnson returned to his vehicle, we need not reach a

---

[1] While we note that Officer Burnette testifies that the address is 681 Grant Street, the structure in the photograph bears an address of 682 Grant Street.

conclusion on the "impound" issue in order to determine whether the State produced sufficient evidence as to obstructing official business.

**{¶16}** The State's evidence indicates that (1) Officer Burnette observed Mr. Johnson operating the vehicle immediately after he was cited for driving with a suspended license, (2) while attempting to get Mr. Johnson to turn off the car, Officer Burnette was assaulted when Mr. Johnson's car struck him in the right knee, and (3) Officer Burnette commanded Mr. Johnson to "shut the car off," and Mr. Johnson ignored his command by putting the car in drive and moving forward. Reviewing the evidence in a light most favorable to the State, this Court concludes that any rational trier of fact could have found that the essential elements of obstructing official business were proved beyond a reasonable doubt. *See Jenks* 61 Ohio St.3d 259, at paragraph two of the syllabus. Without regard to the propriety of the officer's initial decision to tow the vehicle, once Mr. Johnson returned to the vehicle and began to operate it a second time, in the presence of the officer and immediately after the citation was given, the officer was justified in leaving his cruiser to investigate the "second" driving offense. The resulting assault that took place when Mr. Johnson put the car in reverse and ran into the officer gave rise to his arrest for driving under suspension and obstructing official business, and assured that which Mr. Johnson had sought to avoid – the impoundment of his vehicle.

**{¶17}** Therefore, notwithstanding whether Officer Burnette was *initially* authorized to tow Mr. Johnson's vehicle from the driveway, we conclude that there was sufficient evidence to establish that Mr. Johnson, without privilege to do so, and with purpose to obstruct or delay Officer Burnette from investigating a second offense of driving under suspension, acted to hamper or impede the officer's performance of his lawful duties by striking the officer, ignoring commands to stop the car, and attempting to flee on foot. *See State v. Griffin*, 9th Dist. Summit

No. 19278, 1999 WL 334781, \*2 (May 26, 1999) (the appellant's conviction for obstructing official business was supported by sufficient evidence when, instead of complying with the officer's request to see his license, the appellant attempted to flee on bicycle, then on foot, and then hid behind a furnace in someone's basement).

{¶18} Accordingly, the record contains sufficient evidence to uphold Mr. Johnson's conviction for obstructing official business.

Assault

{¶19} Mr. Johnson was convicted of assault, in violation of R.C. 2903.13(A), which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to another * * *." Further, R.C. 2903.13(C)(5) provides that "[i]f the victim of the offense is a peace officer * * * while in the performance of [his] official duties, assault is a felony of the fourth degree."

{¶20} In his brief, Mr. Johnson asserts that the State failed to meet its burden of production because there was no evidence that Officer Burnette was a peace officer as defined by R.C. 2935.01(B) and R.C. 3345.04(B). Mr. Johnson argues that, even if there was sufficient evidence with regard to the other elements of assault, there was not sufficient evidence produced with regard to Officer Burnette being a peace officer, which elevates the charge from a first degree misdemeanor to a fourth degree felony. Specifically, Mr. Johnson contends that there was (1) no testimony, stipulation, or judicial notice that the University of Akron is a state university, and (2) no testimony or stipulation regarding Officer Burnette's qualifications for being a police officer, whether Officer Burnette swore an oath of office, and whether he was wearing a badge, uniform, or driving a marked cruiser on the date of the incident. Because Mr. Johnson has limited his challenge to whether the State produced sufficient evidence of Officer Burnette being a peace officer as defined by Ohio law, we likewise will limit our discussion.

{¶21} R.C. 2935.01(B) defines "peace officer" as a "state university law enforcement officer appointed under section 3345.04 of the Revised Code[.]" Further, R.C. 3345.04(B) provides that:

> [T]he board of trustees of a state university * * * may designate one or more employees of the institution, as a state university law enforcement officer, in accordance with section 109.77 of the Revised Code, and, as state university law enforcement officers, those employees shall take an oath of office, wear the badge of office, serve as peace officers for the college or university, and give bond to the state for the proper and faithful discharge of their duties in the amount that the board of trustees requires.

{¶22} During the State's case-in-chief, Officer Burnette testified that: (1) he has been employed with the University of Akron Police Department for seventeen years, (2) he has been a police officer for fourteen years, (3) he typically patrols the University Park District, which comprises 50 square blocks around the campus, and (4) he activated the overhead lights on the cruiser when he stopped Mr. Johnson. The State also presented evidence of several photographs showing that Officer Burnette was wearing a police officer's uniform and badge at the time of the incident.

{¶23} However, although the State presented evidence that Officer Burnette is a *University of Akron police officer*, it failed to present any further evidence that he is a "peace officer" as defined in R.C. 2935.01(B): a "state university law enforcement officer *appointed* under section 3345.04 of the Revised Code[.]" (Emphasis added.) As indicated above, R.C. 2903.13(C)(5) enhances the sentence for assault from a first degree misdemeanor to a fourth degree felony if the State proves that the victim is a "peace officer."

{¶24} As such, even reviewing the evidence in a light most favorable to the State, this Court cannot conclude that any rational trier of fact could have found that, for purposes of the R.C. 2903.13(C)(5) enhancement, the essential elements of assault on a *peace officer* were

proved beyond a reasonable doubt. *See Jenks*, 61 Ohio St.3d 259, at paragraph two of the syllabus.

{¶25} Accordingly, pursuant to R.C. 2903.13(A), the record contains sufficient evidence to uphold Mr. Johnson's conviction for assault because he "knowingly cause[ed] or attempt[ed] to cause physical harm to another * * *," but does not contain sufficient evidence to uphold the R.C. 2903.13(C)(5) sentencing enhancement for assault on a peace officer. In light of the foregoing, this matter must be remanded in order for the trial court to resentence Mr. Johnson to a first degree misdemeanor, instead of a fourth degree felony.

Resisting arrest

{¶26} Mr. Johnson was convicted of resisting arrest, in violation of R.C. 2921.33(B), which provides that "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another person and, during the course of or as a result of the resistance or interference, cause physical harm to a law enforcement officer."

{¶27} In his brief, Mr. Johnson argues that because there is insufficient evidence to support his conviction for obstructing official business, there is also insufficient evidence to support his conviction for resisting arrest. In making this argument, Mr. Johnson assumes that, after driving illegally in front of the officer, striking the officer in the knee with his car, disobeying the officer's commands, and attempting to flee on foot, (causing the officer to draw his gun, use his taser, and tackle him), Officer Burnette could only arrest him for obstructing official business. Such is not the case. Mr. Johnson also argues that the State failed to produce evidence that he caused Officer Burnette physical harm *while* resisting arrest, because the harm caused to Officer Burnette's knee occurred *prior* to there being an arrestable offense.

**{¶28}** Generally, "'[i]n order to effectuate an arrest, the arresting officer must have probable cause to believe that the person to be arrested is engaging in criminal activity.'" *State v. McCall*, 9th Dist. Lorain No. 09CA009729, 2010-Ohio-4283, ¶ 10, quoting *State v. McGinty,* 9th Dist. Medina No. 08CA0039-M, 2009-Ohio-994, ¶ 11. Further, regarding misdemeanor offenses, the Supreme Court of Ohio stated that:

> Police officers in Ohio, under R.C. 2935.03, have authority to arrest and detain persons found violating the laws of this state, or ordinances of municipal corporations, until a warrant can be obtained. This language, "found violating," has been interpreted to authorize a warrantless arrest for misdemeanor only where the offense has been committed in the officer's presence.

*State v. Matthews*, 46 Ohio St.2d 72, 75-76 (1976), quoting R.C. 2935.03(A)(1).  *See also* Crim.R. 4(A)(3).

**{¶29}** As discussed above, there *is* sufficient evidence in the record to support Mr. Johnson's conviction for obstructing official business.  As such, his argument regarding the legality of the subsequent arrest, on that basis, is not well-taken.  Further, the State presented evidence that, after issuing the original citation, Officer Burnette once again observed Mr. Johnson operating a motor vehicle with a suspended license.  Because Mr. Johnson committed a fourth degree misdemeanor in Officer Burnette's presence, probable cause existed to arrest him at that time.  *See* R.C. 4510.16(D)(2).  Additionally, the State's evidence showed that Officer Burnette's knee was injured in the process of stopping Mr. Johnson from driving away, which logically, occurred prior to his arrest.

**{¶30}** Reviewing the evidence in a light most favorable to the State, this Court concludes that any rational trier of fact could have found that the essential elements of resisting arrest were proved beyond a reasonable doubt: that Mr. Johnson, recklessly or by force, resisted or interfered with his lawful arrest and, during the course of or as a result of the resistance or

interference, caused physical harm to Officer Burnette. *See Jenks*, 61 Ohio St.3d 259, at paragraph two of the syllabus.

**{¶31}** Accordingly, the record contains sufficient evidence to uphold Mr. Johnson's conviction for resisting arrest.

**{¶32}** Mr. Johnson's first assignment of error is sustained, in part, as to the R.C. 2903.13(C)(5) sentencing enhancement for assault on a peace officer, and overruled as to his convictions for obstructing official business, assault, and resisting arrest.

## ASSIGNMENT OF ERROR II

[MR.] JOHNSON'S CONVICTIONS FOR ASSAULT, OBSTRUCTION OF OFFICIAL BUSINESS, AND RESISTING ARREST [ARE] AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶33}** In his second assignment of error, Mr. Johnson argues that his convictions for obstructing official business, assault, and resisting arrest are against the manifest weight of the evidence. In determining whether a conviction is against the manifest weight of the evidence, this Court must:

[R]eview the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (1986). "This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant." *State v. Taylor*, 9th Dist. Summit No. 21307, 2003-Ohio-2025, ¶ 7, citing *Otten* at 340.

**{¶34}** An appellate court that overturns a jury verdict as against the manifest weight of the evidence acts in effect as a "thirteenth juror," setting aside the resolution of testimony and

evidence as found by the trier of fact. *State v. Thompkins,* 78 Ohio St.3d 380, 387 (1997). "A conviction is not against the manifest weight of the evidence merely because there is conflicting evidence before the trier of fact." *State v. Haydon*, 9th Dist. Summit No. 19094, 1999 WL 1260298, *7 (Dec. 22, 1999). Additionally, it is well established that "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus.

Obstructing Official Business

{¶35}  R.C. 2921.31, provides that:

(A) No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.

{¶36}  We note that Mr. Johnson's arguments as to the weight of the evidence for obstructing official business are almost identical to those regarding sufficiency of the evidence. Again, Mr. Johnson has challenged the production of the State's evidence, instead of challenging the weight or credibility of the State's evidence.  Therefore, because we have already addressed sufficiency of the evidence as to obstructing official business, we decline to do so again.

Assault

{¶37}  R.C. 2903.13(A), provides that "[n]o person shall knowingly cause or attempt to cause physical harm to another * * *." Here, Mr. Johnson contends that it is against the manifest weight of the evidence that he "knowingly" caused physical harm to Officer Burnette.  Physical harm means "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably

exist." R.C. 2901.22(B). Further, in order to determine whether Mr. Johnson acted "knowingly," his "state of mind must be determined from the totality of circumstances surrounding the alleged crime." *Taylor*, 2003-Ohio-2025, at ¶ 13.

**{¶38}** In the State's case-in-chief, Officer Burnette testified that he parked his police cruiser behind Mr. Johnson at 681 Grant Street, leaving some space between the vehicles. After verifying that Mr. Johnson's license was still suspended, Officer Burnette placed him in the back seat of the police cruiser and issued a traffic citation. He then allowed Mr. Johnson to return to his car to make a phone call and gather his personal items. Officer Burnette testified that when he saw the reverse lights go on, he immediately got out of the police cruiser and approached the driver's door. At that time, Mr. Johnson "peel[ed] his tires in reverse," hit Officer Burnette, and then hit a tree before attempting to drive forward through the yard.

**{¶39}** Mr. Johnson testified that he had been pulled over three times in the past by Officer Burnette for driving under suspension. Each time, Officer Burnette cited him and towed his car. Mr. Johnson stated that, on the evening of December 10, 2012, he was frustrated because he did not want his car to get towed. He also stated that he "made a dumb decision by even getting in the car in the first place[.]" Mr. Johnson further testified that when he returned to his car to make a phone call, he knew Officer Burnette was waiting inside the police cruiser for the tow truck. Additionally, Mr. Johnson claimed that it was a dark and rainy night, that he "had no clue [Officer Burnette] was even out of his car," and that he thought he hit a tree. Further, on cross-examination, Mr. Johnson admitted that: (1) he was driving under suspension that night, and (2) he put the car in reverse and hit Officer Burnette's knee with his car.

**{¶40}** It is well-settled that the trial court is "free to believe all, part, or none of the testimony of each witness." *Prince v. Jordan,* 9th Dist. Lorain No. 04CA008423, 2004-Ohio-

7184, ¶ 35, citing *State v. Jackson,* 86 Ohio App.3d 29, 33 (4th Dist.1993). "The finder of fact is best able to judge the credibility of witnesses because the finder of fact is present to 'view witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *State v. Lynch*, 9th Dist. Lorain No. 13CA010357, 2014-Ohio-968, ¶ 18, quoting *State v. Cook,* 9th Dist. Summit No. 21185, 2003-Ohio-727, ¶ 30, quoting *Giurbino v. Giurbino,* 89 Ohio App.3d 646, 659 (8th Dist.1993). Further, "[a] conviction is not against the manifest weight because the [trier of fact] chose to credit the State's version of events." *See State v. Peasley,* 9th Dist. Summit No. 25062, 2010-Ohio-4333, ¶ 18.

{¶41} Here, the trial court could reasonably conclude that Mr. Johnson knew his conduct would cause harm to Officer Burnette. Officer Burnette testified that he parked his police cruiser behind Mr. Johnson's car, leaving some space between the vehicles. When Mr. Johnson attempted to leave, Officer Burnette was sitting inside the police cruiser waiting for the tow truck to arrive. A reasonable trier of fact could infer that Mr. Johnson was able to view the location of the two vehicles, in relation to each other, from the back seat of the police cruiser. Additionally, because Mr. Johnson knew his license was suspended and that Officer Burnette planned to tow his car that night, it is reasonable to infer that Mr. Johnson also knew Officer Burnette would try to stop him from committing yet another driving infraction. Finally, because Mr. Johnson knew Officer Burnette was behind him and would have to approach his vehicle on foot, the trial court could reasonably conclude that Mr. Johnson had knowledge that his actions of peeling the car in reverse toward Officer Burnette would cause him injury.

**{¶42}** After careful review of the record, we cannot conclude that this is the extraordinary case where the trial court created a manifest miscarriage of justice in finding Mr. Johnson guilty of assault.

**{¶43}** Accordingly, Mr. Johnson's conviction for assault is not against the manifest weight of the evidence.

Resisting Arrest

**{¶44}** R.C. 2921.33(B) provides that "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another person and, during the course of or as a result of the resistance or interference, cause physical harm to a law enforcement officer." Here, Mr. Johnson argues that there was no evidence presented to indicate that he recklessly or by force resisted his arrest between the issuance of the first traffic citation and the point in time when he was ultimately arrested. He also argues that he was not resisting arrest because, after being tased, his "body shut down," and he did not resist Officer Burnette's attempt to handcuff him.

**{¶45}** To the extent that Mr. Johnson even makes a manifest weight of the evidence argument, the trial court heard detailed testimony from Officer Burnette regarding the course of events from the time Mr. Johnson attempted to leave in his car, to the point that he was arrested. The trial court also heard Mr. Johnson testify that he was not resisting arrest. As such, the trial court was in the best position to determine the credibility of the witnesses' testimony as to whether Mr. Johnson resisted arrest when he struck the officer with his car, disobeyed the officer's commands, fled on foot, and continued to struggle after he was tased and tackled. *See Prince*, 2004-Ohio-7184, at ¶ 35, (the trial court is "free to believe all, part, or none of the testimony of each witness").

{¶46} After careful review of the record, we cannot conclude that this is the extraordinary case where the trial court created a manifest miscarriage of justice in finding Mr. Johnson guilty of resisting arrest.

{¶47} Accordingly, Mr. Johnson's conviction for resisting arrest is not against the manifest weight of the evidence.

{¶48} Mr. Johnson's second assignment of error is overruled.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED ERROR WHEN IT CONVICTED AND SENTENCED [MR.] JOHNSON FOR DRIVING UNDER SUSPENSION AS A MISDEMEANOR OF THE FIRST DEGREE WHEN THE OFFENSE IS A MISDEMEANOR OF THE FOURTH DEGREE.

{¶49} In his third assignment of error, Mr. Johnson argues that the trial court erred in sentencing him to a definite jail term of 180 days for driving under financial responsibility law suspension or cancellation, in violation of R.C. 4510.16, a misdemeanor of the fourth degree. Mr. Johnson also argues that the trial court erred in suspending his driver's license for a definite period of 6 months.

{¶50} The State has conceded to this assignment of error.

{¶51} R.C. 4510.16(D)(2) provides that "[i]f, within three years of the offense, the offender previously was convicted of or pleaded guilty to two or more violations of this section, or any combination of two violations of this section or section 4510.11 or 4510.111 of the Revised Code, or a substantially equivalent municipal ordinance, the offense is a misdemeanor of the fourth degree."

{¶52} Here, the trial court's journal entry incorrectly classifies this offense as a misdemeanor of the first degree and sentences Mr. Johnson to a definite jail term of 180 days, should he violate the conditions of his community control sanctions. However, because Mr.

Johnson was convicted of a misdemeanor of the fourth degree, the trial court can only lawfully impose a definite jail term of not more than 30 days, should he violate the conditions of his community control sanctions. *See* R.C. 2929.24(A)(4).

**{¶53}** Additionally, R.C. 4510.16 does not grant the trial court authority to suspend Mr. Johnson's driver's license.

**{¶54}** Accordingly, Mr. Johnson's third assignment of error is sustained.

### III.

**{¶55}** In sustaining, in part, and overruling, in part, Mr. Johnson's first assignment of error, overruling Mr. Johnson's second assignment of error, and sustaining Mr. Johnson's third assignment of error, the judgment of the Summit County Court of Common Pleas is affirmed, in part, reversed, in part, and remanded for further proceedings consistent with this decision.

Judgment affirmed, in part,
reversed, in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

CARLA MOORE
FOR THE COURT

HENSAL, J.
CONCURS.

BELFANCE, J.
CONCURS IN JUDGMENT ONLY.


APPEARANCES:

STEPHANIE YUHAS, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.