[Cite as *State v. Zuckerman*, 2015-Ohio-4168.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| STATE OF OHIO | | C.A. No. 27522 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| EDWARD M. ZUCKERMAN | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. CR 14 01 0080 |

DECISION AND JOURNAL ENTRY

Dated: October 7, 2015

---

WHITMORE, Judge.

{¶1} Defendant-Appellant, Edward Zuckerman, now appeals from his conviction in the Summit County Court of Common Pleas. This Court affirms.

I

{¶2} Late on the evening of June 8, 2012, Kimberly C. joined her friend Angela Young for a drink after work. At the time, Young was Zuckerman's girlfriend and the two had just moved into an apartment in Cuyahoga Falls. Young invited Kimberly to spend the night at the apartment and she, Kimberly, and Zuckerman drank together until approximately 2:30 a.m. the following morning. Because Young and Zuckerman did not have any furniture in their new apartment, Young set up a makeshift bed for Kimberly on the floor next to the mattress where Young and Zuckerman planned on sleeping.

{¶3} There is no dispute that, at some point after Kimberly lay down, Zuckerman fondled her breasts, inserted his finger into her vagina, and briefly had vaginal intercourse with

her. According to Kimberly, she never gave her consent for the encounter and did not move while Zuckerman assaulted her. According to Zuckerman, Kimberly initiated their contact, helped him to pull her pants down, and adjusted her body position so that he could have sex with her. Nevertheless, over the next several months, he repeatedly denied having had sexual intercourse with Kimberly. Only after his arrest did Zuckerman say that he and Kimberly had engaged in consensual sex.

{¶4} A grand jury indicted Zuckerman on one count of rape, in violation of R.C. 2907.02(A)(1)(c). The matter then proceeded to a jury trial. At the conclusion of the trial, the jury found Zuckerman not guilty of rape, but guilty of the lesser-included offense of sexual battery. The court sentenced Zuckerman to five years in prison and classified him as a Tier III sexual offender.

{¶5} Zuckerman now appeals from his conviction and raises one assignment of error for our review.

II

Assignment of Error

THE DEFENDANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶6} In his sole assignment of error, Zuckerman argues that his sexual battery conviction is against the manifest weight of the evidence. We disagree.

{¶7} In determining whether a conviction is against the manifest weight of the evidence, an appellate court:

> must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). Weight of the evidence concerns whether a greater amount of credible evidence supports one side of the issue than supports the other. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, "the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.*, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). Therefore, the Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Browning*, 9th Dist. Summit No. 26687, 2013-Ohio-2787, ¶ 14, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶8} "No person shall engage in sexual conduct with another, not the spouse of the offender, when * * * [t]he offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired." R.C. 2907.03(A)(2). "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." Former R.C. 2901.22(B). Whoever commits the foregoing offense is guilty of sexual battery. R.C. 2907.03(B).

{¶9} Kimberly C. testified that she met Zuckerman and Young, his former girlfriend, while working as a restaurant server. The three became friends and shared drinks with one another on multiple occasions. On the evening in question, Kimberly finished work around 11:00 p.m. and met Young at another restaurant down the street for drinks. She estimated that she had one drink before the two left and purchased beer at a gas station. Kimberly testified that

she planned on staying at Zuckerman and Young's new apartment that night because her boyfriend was out of town. After the two stopped at the gas station, they drove to the Cuyahoga Falls apartment that Zuckerman and Young shared.

{¶10} Kimberly testified that she drank about five to six beers with Zuckerman and Young before the three decided to visit the bar down the road. At the bar, the three drank a shot of liquor and another beer before returning to the apartment at around 2:30 a.m. According to Kimberly, she decided to go to sleep shortly thereafter because Zuckerman and Young were fighting. She testified that Zuckerman and Young did not have any furniture in their new apartment, so Young set up a makeshift bed for her on the floor in the master bedroom. The makeshift bed was next to a mattress that was on the floor and temporarily served as Zuckerman and Young's bed. Kimberly stated that she fell asleep fully clothed and alone in the room.

{¶11} According to Kimberly, she was awoken at approximately 3:00 a.m. when Zuckerman came into the room and lay down on the floor behind her. She testified that Zuckerman placed his hand inside her shirt and fondled her breast before tugging her pants down part way and inserting his finger into her vagina. He then pulled her pants down further and engaged in vaginal intercourse with her. Kimberly stated that she did not tell Zuckerman to stop or yell out because she did not know what to do and felt that she "had to almost * * * play dead to avoid anything worse from happening." She testified that the incident lasted a short while before Zuckerman stopped, fixed her pants and blanket, and left the room. Kimberly then fell asleep and did not wake up again until the following morning.

{¶12} The following morning, Kimberly did not confront Zuckerman or speak to Young about what had happened. She left the apartment and planned on seeing Young at work later that afternoon, but Young did not come in. Half an hour after Young's shift was meant to start,

Kimberly spoke to her on the phone. She testified that Young asked her to come over and help her pack her things because she wanted to end her relationship with Zuckerman. After telling Young that Zuckerman had forced himself upon her the previous evening, Kimberly agreed to drive to the apartment and help Young.

{¶13} Zuckerman was present at the apartment when Kimberly arrived and she eventually confronted him about the events of the previous evening. According to Kimberly, when she asked Zuckerman whether he remembered what he had done to her the night before, he denied that anything had happened. Instead, he told her he was not interested in her sexually and refused to admit that he had touched her in a sexual manner. She testified that she eventually left the apartment alone because Young chose to stay with Zuckerman.

{¶14} The following day, Kimberly decided to go to the hospital and to file a report at the police station. Kimberly indicated that she struggled with the decision to press charges against Zuckerman because, prior to the events that occurred, he and Young had been her friends. She testified, however, that she ultimately decided that she had to report the incident. According to Kimberly, she never consented to having sexual relations with Zuckerman.

{¶15} Young testified that she and Zuckerman moved into an apartment in Cuyahoga Falls in June 2012. The two were friends with Kimberly and, on the evening these events occurred, Young invited Kimberly back to the apartment. Young confirmed that the two had a drink at a restaurant before driving to a gas station to purchase beer. She further confirmed that she, Kimberly, and Zuckerman drank beer at the apartment, left to have a few more drinks at a nearby bar, and returned to the apartment around 2:30 a.m. Young testified that she and Zuckerman did not have any furniture at their apartment, so she used blankets and pillows to make a bed for Kimberly directly next to the mattress where she and Zuckerman were sleeping.

According to Young, after they returned from the bar, everyone went to sleep at the same time. She stated that she "passed out" from the alcohol and would not have woken easily.

{¶16} After Kimberly left the following morning, Young and Zuckerman had several more drinks. Young testified that they eventually started fighting and she decided that she wanted to leave the apartment. While Zuckerman fell asleep in their bedroom, she spoke with Kimberly on the phone and asked her to come to the apartment and help her gather her things. According to Young, Kimberly did not say anything to her on the phone about Zuckerman having forced himself on her the night before. Rather, Kimberly told her about the previous evening when she came to the apartment.

{¶17} Young testified that she confronted Zuckerman about Kimberly's accusations, but Zuckerman denied that anything had happened. She indicated that she repeatedly gave Zuckerman the opportunity to admit that something consensual had happened, but that he refused to admit that he had engaged in sexual relations with Kimberly. Based on the statements that he made to her, Young ultimately chose to remain in a relationship with Zuckerman. She testified that, near the end of June or the beginning of July, she learned that she was pregnant with Zuckerman's child.

{¶18} Bernadette Bogdas, a forensic nurse at Hillcrest Hospital, testified that she spoke with Kimberly and conducted her sexual assault exam when she came to the hospital. The description of the events that Kimberly gave Bogdas matched the testimony that Kimberly gave at trial, and Bogdas testified that Kimberly was crying during her recitation of the events. She testified that Kimberly did not display any signs of physical trauma, but that it is common not to see any injury in instances of sexual assault. She further testified that she took several swabs from Kimberly as part of the sexual assault examination.

{¶19} At the time these events occurred, Detective Kevin Lohse was a detective at the Cuyahoga Falls Police Department. He testified that he investigated Kimberly's sexual assault complaint and interviewed Zuckerman for the first time in February 2013. At that interview, Zuckerman denied that he had engaged in any sort of sexual acts with Kimberly and said she was "f***ing crazy." Although Detective Lohse offered Zuckerman the possibility that, in his drunken state, he might have confused Kimberly for Young, Zuckerman adamantly denied having sexual intercourse with Kimberly.

{¶20} Detective Lohse testified that he attempted to secure a DNA swab from Zuckerman, but Zuckerman refused on the basis that he needed to talk to his parents and to an attorney. Accordingly, Detective Lohse asked Zuckerman to contact him after he had spoken with those people. Because Detective Lohse never heard back from Zuckerman, he repeatedly tried to contact him by phone. When those efforts failed, he went to Zuckerman's apartment. He testified that Zuckerman once again refused to submit to the DNA swab because he wanted to talk to an attorney. After another period of time passed without word from Zuckerman, Detective Lohse secured a warrant for Zuckerman's DNA and submitted the sample he obtained to the Bureau of Criminal Identification and Investigation ("BCI") for testing. A forensic scientist at BCI determined that the swab taken from Kimberly's vagina contained a male profile that was consistent with Zuckerman's DNA profile.

{¶21} Zuckerman testified in his own defense. Much like Young, he testified that he, Young, and Kimberly all went to bed at the same time after they finished their night of drinking. According to Zuckerman, he was lying on the mattress with Young and dangling his hand over the side when Kimberly reached over and began caressing his hand. He testified that he took Kimberly's caress as an invitation for physical contact, so he turned on his side and the two

kissed. Zuckerman testified that he reached under Kimberly's shirt and fondled her breast before putting his hand inside her pants and inserting his finger into her vagina. He then tried to tug her pants down further, and Kimberly assisted him. Once they pulled her pants down to her knees, Zuckerman got closer and tried to engage in vaginal intercourse with her. He testified that Kimberly had to shift her hips and legs to accommodate him. The two then had sex for about a minute. According to Zuckerman, he was unable to continue, so he stopped and helped Kimberly fix her pants. He then fell asleep and did not wake up again until the following morning.

{¶22} According to Zuckerman, his entire sexual encounter with Kimberly was consensual. He admitted that he repeatedly lied to Young and to the police when he told them that he never had sex with Kimberly, but testified that he did so because he was afraid that Young would end their relationship if he was truthful. He testified that, once he discovered Young was pregnant, he was even more concerned about telling the truth and losing her. Zuckerman conceded that he tried to avoid giving a DNA sample because he thought that the results might show that he had, in fact, engaged in sexual intercourse with Kimberly.

{¶23} Zuckerman argues that the jury lost its way in convicting him because there was no proof that his sexual encounter with Kimberly was not, in fact, consensual. Having reviewed the record, however, we cannot conclude that Zuckerman's conviction for sexual battery is against the manifest weight of the evidence. The jury was presented with two conflicting versions of the events and chose to believe Kimberly's testimony. By his own testimony, Zuckerman repeatedly lied about his sexual encounter with Kimberly and only claimed that it was consensual after he was arrested and the DNA results were available. It was within the province of the jury to assess his credibility. *See State v. Johnson*, 9th Dist. Summit No. 26914,

2014-Ohio-2856, ¶ 40, quoting *Prince v. Jordan*, 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, ¶ 35 ("It is well-settled that the [trier of fact] is 'free to believe all, part, or none of the testimony of each witness.'"). "This Court will not overturn a verdict on a manifest weight challenge simply because the jury chose to believe the State's witnesses rather than [the defendant's]." *State v. Klein*, 9th Dist. Summit No. 26573, 2013-Ohio-3514, ¶ 12. After a thorough review of the record, we cannot conclude that this is the exceptional case where the jury lost its way in convicting Zuckerman. *See Otten*, 33 Ohio App.3d at 340. Therefore, his argument that his sexual battery conviction is against the manifest weight of the evidence lacks merit. His first assignment of error is overruled.

III

{¶24} Zuckerman's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETH WHITMORE
FOR THE COURT

HENSAL, P. J.
MOORE, J.
CONCUR.

APPEARANCES:

MICHAEL J. GOEBL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RACHEL M. RICHARDSON, Assistant Prosecuting Attorney, for Appellee.