[Cite as *State v. Jimenez*, 2019-Ohio-1693.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | C.A. No. 18CA0017-M |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| OMAR ALBERTO PEYNADO JIMENEZ | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 17 CR 0814 |

DECISION AND JOURNAL ENTRY

Dated: May 6, 2019

---

TEODOSIO, Presiding Judge.

{¶1} Appellant, Omar Jimenez, appeals from his conviction for receiving stolen property in the Medina County Court of Common Pleas. This Court affirms.

I.

{¶2} Mr. Jimenez and his two companions ("J.C. and D.T.") traveled together from New Jersey to Ohio and visited various Kohl's stores over the span of several days. D.T. had obtained twenty-one fake Ohio driver's licenses, which she would use to fraudulently purchase large amounts of merchandise from Kohl's. The licenses all had D.T.'s picture on them, but contained the names and social security numbers of actual people who held legitimate Kohl's credit card accounts. D.T. would present these fake licenses to Kohl's cashiers to do an "account look up" of the victims' Kohl's credit card accounts, thereafter charging her purchases to those accounts.

{¶3}    During one visit at the Medina Kohl's store, the three individuals all selected various items throughout the store, before ultimately meeting up at the cash registers.  The store's loss prevention officer ("E.H.") monitored the three on surveillance cameras and thought Mr. Jimenez and J.C. looked suspicious, noting that they were selecting items without paying much attention to price or size.  E.H. called the police to make sure an officer was nearby in case something happened.  The three individuals eventually met up at the cash registers, and D.T. attempted to purchase all of their items together with an "account look up" using a fake identification.  The purchase was declined, however, because the victim's credit card account had reached its spending limit.  The group left the store without making a purchase.

{¶4}    Officer Nicholson conducted a traffic stop nearby, and D.T. soon consented to a search of the vehicle.  D.T.'s fake identifications were found under the carpeting, secured together by a rubber band.  Suitcases and bags filled with merchandise were discovered in the trunk, along with many cell phones and tablets.  When the officer grabbed a green backpack from inside of the car, Mr. Jimenez said, "Mine."  The backpack contained new and old clothing.

{¶5}    Mr. Jimenez was charged with felony-four receiving stolen property, with an alleged property value of $7,500.00 or more, but less than $150,000.00.  After a jury trial, he was found guilty of felony-five receiving stolen property, as the jury found the property value to be $1,000.00 or more, but less than $7,500.00.  The trial court ordered a presentence investigation report and ultimately sentenced him to 180 days in jail.

{¶6}    Mr. Jimenez now appeals from his conviction and raises two assignments of error for this Court's review.

II.

**ASSIGNMENT OF ERROR ONE**

THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE VERDICT AND FINDING OF "GUILTY" AS TO THE FIFTH-DEGREE FELONY CHARGE OF RECEIVING STOLEN PROPERTY, IN VIOLATION OF R.C. 2913.51(A)&(C), AND THE DEFENDANT'S CONVICTION ON THAT CHARGE.

{¶7} In his first assignment of error, Mr. Jimenez argues that his conviction for receiving stolen property was not based on sufficient evidence. We disagree.

{¶8} Whether a conviction is supported by sufficient evidence is a question of law, which this Court reviews de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "Sufficiency concerns the burden of production and tests whether the prosecution presented adequate evidence for the case to go to the jury." *State v. Bressi*, 9th Dist. Summit No. 27575, 2016-Ohio-5211, ¶ 25, citing *Thompkins* at 386. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. However, "we do not resolve evidentiary conflicts or assess the credibility of witnesses, because these functions belong to the trier of fact." *State v. Hall*, 9th Dist. Summit No. 27827, 2017-Ohio-73, ¶ 10.

{¶9} Mr. Jimenez was convicted of receiving stolen property under R.C. 2913.51(A), which states "[n]o person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense." Because the value of the property was $1,000.00 or more, but less than $7,000.00, the offense was a felony of the fifth degree. R.C. 2913.51(C). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will

probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶10} At trial, the State presented testimony from multiple witnesses, including one of Mr. Jimenez's co-conspirators. D.T. testified that she traveled from New Jersey to Ohio with both J.C. and Mr. Jimenez to buy Kohl's merchandise using fake identifications she obtained in New York. D.T. offered to buy some merchandise for J.C. and Mr. Jimenez if they would accompany her on the trip. Although she first met him on the first day of the trip, D.T. testified repeatedly that Mr. Jimenez knew their plan was to use her fake licenses and other people's credit card accounts to purchase merchandise at Kohl's.

{¶11} E.H. testified that he was watching the store's surveillance cameras and noticed Mr. Jimenez and J.C. "suspiciously selecting merchandise." He observed the two men enter the women's athletics department, but soon move to the men's athletics department—one of the store's highest theft areas—and begin selecting high-end merchandise while not paying too much attention to prices or sizes. Based on his experience, E.H. contacted the Medina Township Police and remained in contact with Officer Nicholson as a precaution, to shorten any response time in case a theft occurred. Mr. Jimenez also browsed the shoe department and then met up with D.T. near the beauty products before returning to men's athletics near J.C.

{¶12} According to E.H., all three individuals eventually went to the checkout counter together and all of their items were ultimately scanned for a single transaction. Items totaling $786.84 were scanned, and D.T. presented a fake identification in an attempt to pay with an "account lookup," but the system rejected it. The manager at the checkout counter informed E.H. that the address on D.T.'s identification was in Youngstown while the address on the

Kohl's account was in New York,[1] which E.H. testified was suspicious. E.H. testified that Mr. Jimenez never attempted to pay with his own money for the items he selected, but instead left the store. J.C. was next to leave the store. D.T. then left as well, but told the cashier she would go to her car for some cash and return. Instead, the group entered their vehicle together and attempted to leave the area.

{¶13} Officer Cliff Nicholson of the Medina Township Police Department testified that he conducted a traffic stop of the group's vehicle across the street from Kohl's. He asked for identifications, but all three were only speaking Spanish, so he separated them. He spoke mostly to D.T. because she could speak English. D.T. soon consented to a search of the vehicle, and the officer found twenty-one licenses bound together with a rubber band under the carpet by the front passenger seat. He also found some Kohl's cash rewards coupons. Inside the trunk, he found a cache of suitcases and bags full of merchandise, a majority of which were still new with store tags. The district loss prevention manager for Kohl's ("A.H."), currently in charge of fourteen stores across Ohio and Michigan, testified that the majority of the merchandise came from Kohl's stores. Officer Nicholson testified that he grabbed a green backpack to search, which contained a laptop computer and was full of clothes "still new with creases[,]" and Mr. Jimenez indicated ownership by saying, "Mine." The officer also found various other items that did not come from Kohl's stores, such as nine iPhones, one iPad, and one Samsung Galaxy tablet.

{¶14} The State also introduced a surveillance camera video of the incident, which E.H. had been monitoring in real time. The video largely corroborates the trial testimony as to the

---

[1] E.H. initially testified that the Kohl's account was associated with a North Carolina address, but then stated it was New York during re-cross-examination. Another witness seemed to confuse New York with North Carolina while testifying as well.

individuals' actions within the Medina Kohl's store. Mr. Jimenez can be seen picking up two bags full of merchandise in preparation to leave the store, but he soon puts them back down and leaves the store empty-handed.

{¶15} E.H. testified that he began investigating the fake driver's license numbers and Kohl's cash rewards numbers recovered from the vehicle. He revealed forty-eight illicit Kohl's transactions within the previous three weeks, which he compiled into a spreadsheet that was provided to the police and later entered into evidence at trial. J.C. and Mr. Jimenez were only present, however, for the most recent Ohio trip which occurred between August 27, 2017, and August 30, 2017, and included seven purchases. D.T. testified on cross-examination that both men went into other Kohl's stores with her during that trip as well, apart from the Medina store on the day they were arrested. Mr. Jimenez testified that he recalled going into four or five Kohl's stores. E.H.'s spreadsheet established that during the trip with J.C. and Mr. Jimenez, D.T. made seven fraudulent purchases at five different Kohl's stores, totaling $3,066.02: $462.96 in Boardman on August 27, 2017; $689.88 in Niles on August 27, 2017; $48.03 and $485.17 in Stow on August 29, 2017; $926.46 and $199.45 in Brimfield on August 29, 2017; and $254.07 in Medina on August 30, 2017. The second visit to the Medina Kohl's on August 30, 2017, was not included in the spreadsheet, as the $786.84 attempted purchase was ultimately declined.

{¶16} After a review of the record, this Court concludes that the State presented sufficient evidence, if believed, to establish that Mr. Jimenez committed the offense of felony-five receiving stolen property with a property value of $1,000.00 or more, but less than $7,500.00. The testimony established that Mr. Jimenez knew the purpose of the group's trip to Ohio was to use fake licenses to fraudulently purchase merchandise. He selected items from within the stores and D.T. fraudulently purchased them for him. He picked up two full bags of

merchandise and prepared to leave the store with them. Once the transaction was declined, he did not offer to pay for his own items, but instead simply left the store. He also claimed ownership of a green backpack containing new clothes when it was searched by police. In only four days, Mr. Jimenez and his companions visited five Kohl's stores and made seven purchases totaling $3,066.02, before a final attempted purchase was declined. Based on the evidence presented, a jury could have reasonably found all of the elements of receiving stolen property proven beyond a reasonable doubt.

{¶17} Accordingly, Mr. Jimenez's first assignment of error is overruled.

## ASSIGNMENT OF ERROR TWO

THE DEFENDANT'S CONVICTION OF THE FIFTH-DEGREE FELONY CHARGE OF RECEIVING STOLEN PROPERTY, IN VIOLATION OF R.C. 2913.51(A)&(C), WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶18} In his second assignment of error, Mr. Jimenez argues that his conviction for receiving stolen property was against the manifest weight of the evidence. We disagree.

{¶19} This Court has stated:

In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "[W]hen reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony." *State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5. This discretionary power "should be exercised only in the exceptional case in which the evidence weighs heavily

against the conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also Otten* at 340.

{¶20} Mr. Jimenez's manifest weight argument mirrors his sufficiency argument, as he claims he did not know or have reason to believe the merchandise was obtained through the commission of a theft offense. He further argues that he did not receive, retain, or dispose of the merchandise, and assuming arguendo he did receive or retain some merchandise, his bag of boxer shorts and bag of t-shirts were not valued at over $1,000.00.

{¶21} We note that "sufficiency and manifest weight are two separate, legally distinct arguments." *State v. Vincente-Colon*, 9th Dist. Lorain No. 09CA009705, 2010-Ohio-6242, ¶ 20. "A weight challenge tests the persuasiveness of the evidence the State produced while a sufficiency challenge tests the very production of that evidence." *State v. Hayes*, 9th Dist. Summit No. 26388, 2013-Ohio-2429, ¶ 9. We have already addressed the sufficiency of the evidence in this case, and decline to do so again. *See State v. Johnson*, 9th Dist. Summit No. 26914, 2014-Ohio-2856, ¶ 36. However, Mr. Jimenez argues that even if the evidence presented at trial was somehow sufficient, an independent re-weighing of that same evidence demonstrates that the evidence weighs heavily against conviction.

{¶22} Mr. Jimenez testified on his own behalf at trial. He testified that he is from the Dominican Republic, here visiting family in New Jersey and New York on a tourist visa. According to Mr. Jimenez, J.C. asked him if he wanted to go to Ohio with J.C. and his girlfriend, D.T. She was going to buy J.C. some clothes and had "bonuses or rewards" at some Ohio stores. Mr. Jimenez testified that J.C., however, "didn't want to come here by himself with her. He didn't want to have any, you know, intercourse with her." Mr. Jimenez testified that he told J.C.

he did not have much money left, but he agreed to go on the trip because "it was a good chance for [him] to know another place and things like that * * *."

{¶23} Mr. Jimenez testified that he intended to personally buy the bag of boxer shorts and bag of t-shirts in one of the stores, but admitted that D.T. actually paid for them. He also claimed he intended to personally buy a pair of shoes for his son and another t-shirt for himself at the Medina store, but J.C. put those items with the rest of D.T.'s attempted purchase. Mr. Jimenez claimed he had no knowledge that D.T.'s purchases were fraudulent and claimed that if he was "doing bad things" he would have "grabbed a lot more stuff." When the prosecutor informed him that he had no money or wallet on him when he was arrested and booked at the jail, Mr. Jimenez claimed to have had $125.00 on him, which must have been accidentally mixed in with J.C.'s money.

{¶24} Mr. Jimenez admitted that he can be seen on the surveillance video holding two bags full of merchandise while about to leave the Medina store, but stated that he was only helping to carry it. When asked why he did not simply pay for his own items once the transaction was declined, Mr. Jimenez said he was uncomfortable with the cashier's attitude. When the prosecutor reminded Mr. Jimenez that he does not speak English and therefore could not have understood what the cashier was saying, Mr. Jimenez claimed D.T. told them what happened and he could see "the gestures and attitudes and stuff." Mr. Jimenez testified that D.T. was untruthful on the witness stand and also refuted the officer's testimony that he claimed ownership of the green backpack.

{¶25} Upon review of the evidence presented at trial, we cannot say that Mr. Jimenez's conviction was against the manifest weight of the evidence. To the extent that Mr. Jimenez's testimony contradicted the evidence presented by the State, "'the weight to be given the evidence

and the credibility of the witnesses are primarily for the trier of the facts.'" *State v. Haydon*, 9th Dist. Summit No. 27737, 2016-Ohio-4683, ¶ 28, quoting *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. In sifting through conflicting evidence presented at trial, the trier of fact is free to believe or disbelieve any, or all, of the testimony from each witness. *See Haydon* at ¶ 28. The jury was best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the proffered testimony. *See State v. Cook*, 9th Dist. Summit No. 21185, 2003-Ohio-727, ¶ 30. This Court has consistently held that "[w]e will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version." *State v. Fry*, 9th Dist. Medina No. 16CA0057-M, 2017-Ohio-9077, ¶ 13.

{¶26} After reviewing the evidence presented in this case, we cannot conclude that the jury, in resolving conflicts in the evidence, clearly lost its way and created a manifest miscarriage of justice. *See Otten* at 340. Mr. Jimenez has also not demonstrated how this is an exceptional case where the evidence presented weighs heavily in his favor and against conviction. *See Thompkins* at 387.

{¶27} Accordingly, Mr. Jimenez's second assignment of error is overruled.

III.

{¶28} Mr. Jimenez's first and second assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

CARR, J.
SCHAFER, J.
CONCUR.

APPEARANCES:

JOSEPH F. SALZGEBER, Attorney at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and VINCENT V. VIGLUICCI, Assistant Prosecuting Attorney, for Appellee.